IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 119,665

STATE OF KANSAS,
*Appellee*,

v.

NICHOLAS CORBIN,
*Appellant.*

SYLLABUS BY THE COURT

An appellate court reviews a district court's ruling under K.S.A. 2019 Supp. 21-6622(b) (reason to believe defendant is a person with intellectual disability) for abuse of discretion. The party arguing an abuse of discretion bears the burden of establishing that abuse.

Appeal from Saline District Court; PATRICK H. THOMPSON, judge. Opinion filed April 17, 2020. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: In 2014, Nicholas Corbin pled no contest to first-degree premeditated murder. At sentencing, he argued he was a person with intellectual disability who was not subject to a mandatory minimum prison term by operation of K.S.A. 2019 Supp. 21-

1

6622(b). The district court disagreed and sentenced him to a hard 25 life sentence. While Corbin appealed that decision, the 2016 Legislature amended K.S.A. 76-12b01(i), which provides new standards for deciding intellectual disability under K.S.A. 2019 Supp. 21-6622. See L. 2016, ch. 108, § 1. This court reversed the district court's ruling and remanded to reconsider Corbin's motion using the Legislature's new criteria. *State v. Corbin*, 305 Kan. 619, 386 P.3d 513 (2016) (*Corbin I*).

On remand, the district court resentenced Corbin to the original mandatory term after finding again he was not a person with intellectual disability. He now appeals that second ruling, arguing the court abused its discretion. We affirm because the court's ruling was reasonably based on the law and supported by substantial competent evidence.

FACTUAL AND PROCEDURAL BACKGROUND

The *Corbin I* court described this case this way:

"The facts are undisputed. Nicholas Corbin and his girlfriend, Desirah Overturf, decided to stop feeding their infant son when he turned 2 months old. In addition to starving the baby, Corbin (1) held him upside down by his feet in a stream of water to bathe him and (2) burned his stomach with a hot baby bottle. When the couple did feed their son, Corbin held the baby's arms behind his back.

"One night Overturf noticed her son was no longer breathing and she believed him dead. Corbin put the baby in a bowl of warm water because he had become cold to the touch. He eventually called 911, and upon arrival the emergency responders pronounced the baby dead. Overturf estimated to the police that her son had been fed only 15 out of the 30 days before his death.

"Corbin pled no contest to one count of premeditated first-degree murder, an off-grid person felony. Before sentencing, he filed a motion pursuant to K.S.A. 2015 Supp.

2

21-6622(b) and requested the court determine if he was a person with 'intellectual disability.' Per subsection (f) of the statute, such a person would not be subject to a 'mandatory term of imprisonment' as part of his or her sentence. K.S.A. 2015 Supp. 21-6622(f)." 305 Kan. at 620.

For sentencing purposes in criminal cases, state law sets out a two-step analytical process for a district court to address a defendant's claim of intellectual disability. The court must first decide whether there is sufficient reason to believe the defendant is a person with intellectual disability. If sufficient reason exists, the court must appoint medical professionals, order the defendant's examination, and conduct a full evidentiary hearing at which the defendant is entitled to present evidence and cross-examine witnesses. See K.S.A. 2019 Supp. 21-6622.

Intellectual disability is defined as "having significantly subaverage general intellectual functioning, as defined by K.S.A. 76-12b01, and amendments thereto, to an extent which substantially impairs one's capacity to appreciate the criminality of one's conduct or to conform one's conduct to the requirements of law." K.S.A. 2019 Supp. 21-6622(h). At the time of Corbin's initial sentencing, "significantly subaverage general intellectual functioning" was defined as "performance which is two or more standard deviations from the mean score on a standardized intelligence test specified by the secretary." K.S.A. 2015 Supp. 76-12b01(i).

The court conducted a hearing on Corbin's intellectual disability motion during which it considered two presentence evaluations done with the parties' agreement. One prepared by Trever Patton, Ph.D., of The Therapy Center, and another by Roy Daum, Psy.D., of Larned State Hospital. At the hearing's conclusion, the court denied the motion and sentenced Corbin to a hard 25 life sentence.

3

While Corbin's appeal was pending, the Legislature amended the statute defining "significantly subaverage general intellectual functioning" to add other ways to establish this standard beyond particular performance on standardized tests. It provided that "[s]uch standardized intelligence test shall take into account the standard error of measurement, and subaverage general intellectual functioning may be established by means in addition to standardized intellectual testing." L. 2016, ch. 108, § 1. The Legislature also explicitly provided that the amendments "shall be construed and applied retroactively." L. 2016, ch. 108, § 1.

In Corbin's first appeal, this court assumed without deciding that the amendments applied retroactively, noting the retroactivity statutory language and the parties' silence as to whether it applied to Corbin's case. *Corbin I*, 305 Kan. at 624-25. The *Corbin I* court reversed the denial of the motion and remanded the case with directions to determine anew whether there was "sufficient reason to believe" Corbin "is a person with intellectual disability." K.S.A. 2019 Supp. 21-6622(b). Our court explained:

> "[T]he best course is to afford the district court an opportunity to review Corbin's motion again under K.S.A. 2015 Supp. 21-6622(b)—but with a wider outlook. *In that review*, after again considering the reports of Drs. Patton and Daum, the court may decide to allow additional evidence." (Emphasis added.) 305 Kan. at 627.

On remand, the district court gave Corbin a chance to "present whatever additional information he has." He offered several exhibits:  the existing reports prepared by Dr. Daum and Dr. Patton; reports completed by Central Kansas Mental Health Center, such as the 2009 intake assessment and treatment plan on Corbin's chronic sleeping problems, the 2006 diagnoses of his "Major Depressive Disorder, Single Episode, Moderate Without Psychotic" and "Antisocial personality disorder," and the 2005 domestic violence evaluation showing he had "Oppositional Defiance Disorder" and ADHD,

4

Hyperactive/Impulsive Type"; school records showing his 2.17 GPA (11th grade) and his class rank of 169/252; and various records from his custody in the corrections system. Corbin also testified.

The district court reaffirmed its earlier ruling, adopting by reference its findings from its first decision and making additional findings. It sentenced him again to a hard 25 life sentence. Its factual findings included:

"While Dr. Daum does note a mild intellectual disability range of intellectual functioning, Dr. Patton through the testing found an IQ of 95, based upon the WAIS-IV testing, which as the appellate court noted has been found to be the gold standard for determining intellectual functioning.

"This Court moved to this hearing because contained in the Department of Corrections findings was a test performed in the prison system called the GAMA, standing for General Ability Measure for Adults, which indicated an estimated IQ score of 73, with a range of 83 to 69 and a classification of borderline.

". . . Though his GAMA score suggested below average intelligence, intellectual deficits were not readily apparent during this evaluation, and a consultation with Dr. Fernando indicated that none were apparent during the psychiatric evaluation either.

"Therefore, this Court would also note that throughout the Department of Corrections records that the defendant's cognitive functioning and intelligence were rated as average, with very rare exception, where they might note some question as to some slight impairment, but the overwhelming majority of these reports indicate average for his intelligence and cognitive functioning. . . .

"Reviewing the high school records of the defendant, indicate that . . . he quit, walked away from school, dropped out in his senior year, but at the time he dropped out he had carried a 2.17 GPA and had no history of special education classes.

5

"And this Court . . . notes that Mr. Corbin has been able to function adequately in the prison system. He has been involved in a couple of fights, which required some staples to heal up some wounds, but had been able to function in the general population.

"And note a statement contained in the report dated January 16, 2018, generated by Eva Gadberry, licensed master social worker, that . . . Weippert . . . testing interpretation indicated . . . Mr. Corbin . . . had motivation to be given intellectual disability, however functions normally, and that is this Court's view in reviewing all of these documents. It indicates that Mr. Corbin is, as noted in various documents, very self-centered, very manipulative. In the evaluation classification report . . . , the evaluator notes he may claim to be mentally fragile, but he's also very manipulative and will be a very needy inmate.

"In reviewing these documents as a whole, this Court finds that the GAMA testing . . . does not find that sufficient to change this Court's view that the more accurate, consistent finding is that made by Dr. Patton, that the defendant is functioning at a below average mental capacity.

"The issues that Mr. Corbin has displayed, with his history of anger, defiance, disruptive behavior, high conflict with his parents and other authority figures are not the result of any intellectual disability, but instead of his other personality characteristics and mental health issues.

"And particularly the court would find that he did not suffer from intellectual disability that substantially impaired his capacity to appreciate the criminality of conduct or to conform his conduct to the requirements of law.

"He was able to live on his own, pay his bills, on track to graduate, but for his decision to leave the school and never go back. He's completed his GED since he's been in the Department of Corrections, which was one of the things that had been mentioned in Dr. Patton's evaluation, as to him not being able to focus on multiple things and so he couldn't complete a GED, but he's shown he's capable of doing that.

6

"He clearly appreciated the seriousness and criminality of the placing the bottle on the child's stomach, and would note, despite his claim today that the officers forced him into saying that, that he did admit he set the bottle on the stomach and burned the child, and that they were afraid to take the child to the doctor because they would take away from us. Clearly he appreciated the wrongness of that behavior.

"Also, the attempt to warm the child in water after the child had died, before the authorities were even called to deal with . . . his dead son, [the] Court believes the facts in this case more than adequately show that Mr. Corbin's intellectual abilities were not impaired to the point he could not appreciate the criminality of his conduct or, even given his own testimony here today, that he was incapable of conforming his conduct to the requirement of law.

"He is impulsive, he is self-centered, he is manipulative, but he is not intellectually impaired in this court's—actually disabled in this Court's view, as defined by the statute as amended by the legislature.

"This court finds that the sentence as imposed originally should remain, the 25 year minimum to life, that it is an appropriate sentence, based upon the horrific treatment of this three-month-old baby, who was totally dependent upon his parents for his care, and they neglected and chose to starve this baby to death. . . . The Court believes its sentence originally was correct and reaffirms that sentence at this time."

Corbin appealed this second denial of his motion. Jurisdiction is proper. See K.S.A. 2019 Supp. 22-3601(b) (cases permitted to be directly taken to Supreme Court); K.S.A. 60-2101(b) (Supreme Court jurisdiction over direct appeals governed by K.S.A. 2019 Supp. 22-3601).

7

The State points out some ambiguity in the district court's approach on remand. It suggests that by permitting Corbin to present his additional evidence the district court appeared to skip the threshold determination whether there was sufficient reason to believe Corbin is a person with intellectual disability. See K.S.A. 2019 Supp. 21-6622(b) and (c). The State's view is reinforced somewhat by the district court casting its ruling in terms of whether Corbin was impaired, even though it also stated it was reaffirming its previous ruling that there was no reason to believe Corbin was impaired under subsection (b). We briefly consider this first.

We believe the district court's decision should be reviewed as a subsection (b) "reason to believe" determination. We note our mandate directed the district court to review Corbin's motion again under subsection (b) using the Legislature's revised criteria, and invited it to allow additional evidence as part of that review. *Corbin I*, 305 Kan. at 627. And we observe the district court did not appoint experts as would have been required for a subsection (c) hearing.

An abuse of discretion standard applies when reviewing a district court's reason-to-believe ruling under K.S.A. 2019 Supp. 21-6622(b). A court abuses its discretion when its action is (1) arbitrary, fanciful, or unreasonable, i.e., if no reasonable person would have taken the view adopted by the court; (2) based on an error of law, i.e., if the discretion is guided by an erroneous legal conclusion; or (3) based on an error of fact, i.e., if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. The party arguing an abuse of discretion bears the burden of establishing that abuse. *Corbin I*, 305 Kan. at 622.

8

One month after the district court ruled on Corbin's motion on remand, this court released *State v. Thurber*, 308 Kan. 140, 420 P.3d 389 (2018), holding that a portion of the statute's "intellectual disability" definition as provided in K.S.A. 2019 Supp. 21-6622(h) violated the Eighth Amendment to the United States Constitution. The *Thurber* court announced,

> "In death penalty cases, the restriction in K.S.A. 2015 Supp. 21-6622(h) limiting the class of intellectually disabled persons qualifying for protection against execution to only those having significantly subaverage general intellectual functioning '*to an extent which substantially impairs one's capacity to appreciate the criminality of one's conduct or to conform one's conduct to the requirements of law*' violates the Eighth Amendment to the United States Constitution." (Emphasis added.) *Thurber*, 308 Kan. 140, Syl. ¶ 17.

The *Thurber* court held the incapacity language that is highlighted above was severable from the remainder of the statute in death penalty cases such as Thurber's. 308 Kan. at 231.

It is obvious the district court in Corbin's case based its denial of his motion on the same statutory incapacity language. But we need not consider *Thurber*'s implications, if any, because Corbin did not argue its holding should be extended outside the death penalty context. See *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019) ("Issues not adequately briefed are deemed waived or abandoned."); *State v. Pewenofkit*, 307 Kan. 730, Syl. ¶ 2, 415 P.3d 398 (2018) ("[A] point raised incidentally in a brief and not argued therein is also deemed abandoned."). Corbin advances a straightforward abuse of discretion argument based on his assertion that the district court erred in analyzing the facts.

9

Moving to the merits, Corbin claims "there was substantial evidence that [he] met the statutory definition of a person with an intellectual disability." He points to: (1) Dr. Daum's report that Corbin "demonstrated evidence of limited intellectual and adaptive behavior functioning"; (2) Dr. Patton's finding that Corbin's "profile on a robust nonverbal measure of executive function (that is generally sensitive to AD/HD symptoms) is primarily in the borderline impaired to extremely impaired range. His profile clearly exhibits significant problems with executive functioning," specifically "with novel problem-solving, organization, tracking, and attention"; and (3) his own testimony that when he was in school, he usually took easy classes, teachers passed him if he tried, and he eventually dropped out.

But this does not warrant reversal. While Dr. Daum stated Corbin "demonstrated evidence of limited intellectual and adaptive behavior functioning," he also noted Corbin's intellectual functioning was within the moderately below average scale. Similarly, Dr. Patton suggested Corbin's cognitive ability was at the lower end of the average range. And while Corbin testified he took easy classes and eventually dropped out of school, in view of the entire record those facts do not supply sufficient reason to believe he is a person with intellectual disability. The district court's decision explains its rationale with numerous references to portions of the record contrary to Corbin's arguments.

We hold the district court did not abuse its discretion when it rejected Corbin's motion and imposed a mandatory term of imprisonment.

Affirmed.

MICHAEL E. WARD, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Ward was appointed to hear case No. 119,665 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.